IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-771-D

| | |
|---|---|
| BETTY MAJSTOROVIC, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> STATE FARM FIRE AND CASUALTY ) <br> COMPANY, ) <br> ) <br> Defendants. ) | **ORDER** |

On November 12, 2015, Betty Majstorovic ("Majstorovic" or "plaintiff") sued State Farm Fire and Casualty Company ("State Farm" or "defendant") in Cumberland County Superior Court for unfair claims settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11), unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, breach of contract, bad faith, and mental and emotional distress. Compl. [D.E. 1-1]. On August 25, 2016, State Farm removed the action to this court [D.E. 1].

On July 26, 2017, State Farm moved for partial summary judgment [D.E. 19], filed a supporting memorandum [D.E. 21], moved to exclude Majstorovic's proposed expert [D.E. 22], and filed a supporting memorandum [D.E. 23]. On August 16, 2017, Majstorovic responded in opposition to both motions [D.E. 24, 26] and filed memoranda in support [D.E. 25, 27]. On September 7, 2017, State Farm replied [D.E. 32]. As explained below, State Farm's motion for partial summary judgment is granted and State Farm's motion to exclude Majstorovic's proposed expert is denied as moot.

I.

Majstorovic owned a condominium in Fayetteville, North Carolina. See Compl. ¶ 9; Majstorovic Aff. [D.E. 29-1] ¶ 6. State Farm issued Majstorovic a homeowner's insurance policy. See Compl. ¶¶ 8–10. The policy was in effect from July 3, 2012, through July 3, 2013. [D.E. 20] ¶ 2. Sometime between December 24, 2012, and January 26, 2013, water began leaking into Majstorovic's condominium from the ceiling. See Majstorovic Aff. ¶ 8; Greg Briggs Dep. [D.E. 20-3] 3. The leak originated from Gregg Briggs's condominium which was located directly above Majstorovic's condominium. See Briggs Dep. at 3; Betty Majstorovic Dep. [D.E. 20-10] 3. Majstorovic contacted Briggs concerning the leak. See Briggs Dep. at 3. Majstorovic initially agreed to allow Briggs to make the necessary repairs to her condominium because the leak originated from his condominium. See Briggs Dep. at 6; Alice McCorquodale Dep. [D.E. 20-4] 6.

Majstorovic's daughter, Shelia Young, was out of town when the leak occurred. Young learned about the leak when she returned home and began assisting her mother in handling the issue. See Shelia Young Aff. [D.E. 29-2] ¶¶ 3–5. On February 25, 2013, Majstorovic and Young contacted State Farm for the first time. See Shelia Young Dep. [D.E. 20-6] 9–11. Majstorovic and Young spoke with Donna Kimmons ("Kimmons"). See id. Kimmons was an employee of the State Farm agency that issued the insurance policy to Majstorovic. See John LaPrade Dep. [D.E. 20-7] 3. After speaking with State Farm, Majstorovic decided to pursue her property damage claim against Briggs and his insurance carrier. See Majstorovic Dep. at 7; Young Dep. at 9–11. Shortly thereafter, Briggs ceased working on the condominium when Young contacted the Fayetteville Police Department and accused Briggs of breaking and entering. See Young Dep. at 9, 11; McCorquodale Dep. at 3.

Sometime in late February or early March 2013, Majstorovic and Young contacted All

2

Seasons Air Conditioning and Heating, Inc. ("All Seasons") to complete the repair work. See Young Dep. at 11; Majstorovic Aff. ¶ 26. All Seasons inspected Majstorovic's property and provided her with a work estimate which included replacing the sheetrock in the ceiling, the air conditioning and heating unit, the fan coil, and the duct system. See Majstorovic Aff. ¶ 26; Young Aff. ¶ 15; [D.E. 29-2] (estimate). All Seasons subcontracted part of the work to David Wheeler. See Wheeler Dep. [D.E. 20-8] 9. Specifically, All Seasons hired Wheeler to tear out and repair the ceilings. See id. Majstorovic and Young also hired Wheeler to remove wallpaper, paint the walls, and remove the carpet. See id.; Majstorovic Aff. ¶¶ 29–30. After Wheeler finished painting the condominium, Young did not pay Wheeler the outstanding balance for his work due to a dispute over the quality of the paint. See Wheeler Dep. at 20–21. In early April, Wheeler ceased working on the condominium due to the dispute. See id. at 23–24, 28

On March 15, 2013, Young, on behalf of Majstorovic, emailed State Farm to follow-up concerning the February 25 conversation with Kimmons. Young Aff. ¶ 10; [D.E. 20-7] 28. The e-mail stated:

> 1. I called your office on 25 February 2013 and spoke with Donna, regarding water damage to my home, caused the upstairs apartments hot water heater bursting, on 26 January 2013. I have been dealing with the owner of the upstairs apartment, and attempting to have him, or his home owners insurance handle the reimbursement for damages to my interior dwelling, and personal property, along with loss of use of my dwelling[.]
> 2. On January 26th, 2013, the upstairs units water heater burst, causing water to drain into my apartment, through the ceiling, the heating and air vents, and my electrical fixtures. This incident caused damage to my ceilings, heating and air unit, electrical fixtures, drywall, carpet and flooring.
> 3. So, far the owner of the upstairs unit has been to say the least extremely uncooperative. He falsely claimed Allstate as is homeowners insurance, and then USAA. Apparently, he had no homeowners insurance at the time of the incident.
> 4. **I am seeking legal counsel regarding this incident, and will contact you again if need be, but I wish at this time to hold the upstairs units owner responsible**

3

**for the damages he has caused.**

[D.E. 20-7] 28 (emphasis added).

On April 15, 2013, and sometime after learning that Briggs did not have the proper renter's insurance, Young filed an insurance claim with State Farm through a State Farm's agent's office. See Donald Dinsmore Dep. [D.E. 20-5] 14; Sharon Hering Aff. [D.E. 20-9] ¶ 3. On April 17, 2013, State Farm assigned the claim to Sharon Hering ("Hering"). See Hering Aff. ¶ 4. On April 19, 2013, Hering inspected Majstorovic's condominium. See id. ¶ 5. When Hering inspected Majstorovic's condominium, all of the ceilings and carpets had been removed, which made it difficult for Hering to ascertain the extent of the water damage. See id. Majstorovic and Young explained to Hering the work that had already been done to the condominium. Young Aff. ¶¶ 15, 25. Moreover, during the inspection, Young provided Hering with invoices and documentation of the work that was completed, including the proposal that Majstorovic and All Seasons signed. See id. ¶ 25.

On April 23, 2013, State Farm sent Majstorovic a reservation of rights letter. Hering Aff. ¶ 6; [D.E. 20-9] 5. The letter stated that "[i]t is questionable whether the conditions of the policy have been violated by reason of delay by or on behalf of the insured in giving written notice to the Company concerning the accident or occurrence." [D.E. 20-9] 5. The letter also stated "[i]t is questionable whether the conditions of the policy have been violated by reason of failure to exhibit damaged property." Id.

Around May 30, 2013, Majstorovic and Young provided Hering with photographs of the damage. See [D.E. 20-2] 7 (claim log notes). Hering reviewed all of the photographs and invoices submitted to her. See id.; Hering. Aff. ¶ 7. Most of the photographs were taken after the ceilings and carpets had been removed. See Hering Aff. ¶ 7. In the course of her investigation, Hering called

4

All Seasons three times to learn more about the damage, but All Seasons did not return her calls. See id. ¶ 10. On July 26, 2013, Hering sent a letter to Majstorovic explaining the results of her investigation and enclosed a check for $3,309.92. See id. ¶ 11. The letter stated:

> I have [] reviewed the information which you provided. The documentation provided does not support a signifi[c]ant water loss which would have required the pack out of all personal property nor having to vacate the property. The photos depict water stains on the ceiling in areas of light fixtures and vents. This would not warrant the removal of all ceilings throughout the entire unit. No water extraction company was called, which would normally be necessary in a signifi[c]ant water loss. You stated during my inspection that buckets were used to collect water dripping from the ceiling.
>
> I contacted CarpetOne. They indicated that all of the flooring was removed prior to their arrival therefore they could not verify the extent of water damage to the carpet. Depending on the amou[n]t of water, condition of carpet and how long the water was on the carpet, carpet can be dried and relayed.
>
> I contacted 4 Seasons Heating and Air as it appears they did a majority of the work. I was advsied that I needed to speak with Operations Manager Mike Green. I have left him 3 messages over the last couple of weeks in an attempt to verify the extent of the damages which he saw, the need to remove all flooring, insulation and ceilings. He has not returned any of my calls.
>
> Enclosed is an estimate for damages that I was able to document from the information which you have provided along with a corresponding draft in the amount of $3,309.92.
>
> I am happy to consider any other documentation supporting the need to remove all flooring, insulation and ceilings if it can be provided. I would be happy to speak with Mike Green of 4 Seasons and make any necessary changes to my estimate if he is able to explain his findings at the time that required such an extent of demolition.

[D.E. 20-9] 21. Majstorovic did not submit any additional documentation and did not contact State Farm again until February 11, 2015. See Hering Aff. ¶ 14.

II.

In considering a motion for summary judgment, the court views the evidence in the light most

5

favorable to the non-movant and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. See Celotex Corp., 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party then must demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Likewise, a "mere . . . scintilla of evidence in support of the [nonmoving party's] position [will not suffice]; there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252; see Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996).

This court has subject-matter jurisdiction based on diversity. Thus, the court applies state substantive law and federal procedural rules. See Erie R.R. v. Tompkins, 304 U.S. 64, 78–80 (1938); Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). The defendant's motion for summary judgment requires the court to consider the parties' state-law claims and defenses, and the parties

6

agree that North Carolina law applies. Accordingly, the court applies North Carolina law, and must determine how the Supreme Court of North Carolina would rule. See, e.g., Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). "If the Supreme Court of [North Carolina] has spoken neither directly nor indirectly on the particular issue before us, [this court is] called upon to predict how that court would rule if presented with the issue." Id. (quotation omitted).[1] In making that prediction, the court may consider opinions of the North Carolina Court of Appeals, treatises, and the practices of other states. See id.

Majstorovic sued State Farm for (1) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, (2) unfair claims settlement practices in violation of N.C. Gen. Stat. § 58-63-15(11), (3) bad faith, (4) mental and emotional damages, and (5) breach of contract. See [D.E. 1-1]. State Farm moved for partial summary judgment on Majstorovic's claims for unfair claims settlement practices, unfair and deceptive trade practices, bad faith, and mental and emotional damages. See [D.E. 19].

A.

North Carolina's unfair claims settlement practices act, N.C. Gen. Stat. § 58-63-15(11), does not include a private cause of action. See Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 69–70, 529 S.E.2d 676, 682 (2000); Burch v. Lititz Mut. Ins. Co., No. 7:12–CV–107–FL, 2013 WL 6080191, at *8–9 (E.D.N.C. Nov. 19, 2013) (unpublished). Accordingly, the court grants summary judgment to State Farm on Majstorovic's claim for unfair claims settlement practices under N.C. Gen. Stat. § 58-63-15(11).

---

[1] North Carolina does not have a "mechanism . . . to certify questions of state law to its Supreme Court." Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

7

Although N.C. Gen. Stat. § 58-63-15(11) does not include a private cause of action, a plaintiff may obtain relief for violations of N.C. Gen. Stat. § 58-63-15(11) under N.C. Gen. Stat. § 75-1.1 ("UDTPA"). See, e.g., Elliott v. Am. States Ins. Co., 883 F.3d 384, 396 (4th Cir. 2018) ("[T]he remedy for a violation of section 58-63-15 is the filing of a section 75-1.1 claim." (quotation omitted)); Burch, 2013 WL 6080191, at *8–9. In order to establish a prima facie case under the UDTPA, a plaintiff must show: "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray, 352 N.C. at 68, 529 S.E.2d at 681; see Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 798–99 (E.D.N.C. 2009) (collecting cases); N.C. Gen. Stat. § 75-1.1. "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." Gray, 352 N.C. at 68, 529 S.E.2d at 681. Conduct that violates N.C. Gen. Stat. § 58-63-15(11) is an unfair and deceptive act or practice under the UDTPA because "such conduct is inherently unfair, unscrupulous, immoral, and injurious to consumers." Id. at 71, 529 S.E.2d at 683; Country Club of Johnston Cty., Inc. v. U.S. Fid. & Guar. Co., 150 N.C. App. 231, 246, 563 S.E.2d 269, 279 (2002). Moreover, although N.C. Gen. Stat. § 58-63-15(11) requires a showing of a "frequency indicating a 'general business practice,'" a claim brought under the UDTPA does not require a frequency showing. Gray, 352 N.C. at 71, 529 S.E.2d at 683; see Westchester Fire Ins. Co. v. Johnson, 221 F. Supp. 2d 637, 643–44 (M.D.N.C. 2002). Thus, N.C. Gen. Stat. § 58-63-15(11) provides "examples of conduct [supporting] a finding of unfair or deceptive acts or practices." Johnson, 221 F. Supp. 2d at 644 (quotation omitted).

Although the parties dispute numerous issues, Majstorovic's UDTPA claim hinges on one issue: whether Majstorovic filed a claim with State Farm concerning property damage to her condominium on February 25, 2013, or on April 15, 2013. Viewing the evidence in the light most

favorable to Majstorovic, Majstorovic informed State Farm of the water damage to her condominium on February 25, 2013, but she did not file a claim with State Farm until April 15, 2013.

In opposition to this conclusion, Majstorovic contends that she filed a claim concerning the water damage to her property on February 25, 2013. See Young Aff. ¶¶ 8–10; Majstorovic Aff. ¶¶ 15–18. Majstorovic cannot defeat summary judgment, however, by submitting self-serving affidavits that conflict with other record evidence and offer no more than a "scintilla" of proof. See, e.g., Anderson, 477 U.S. at 252; Greer v. Bd. of Educ., 267 F.3d 723, 729 (7th Cir. 2001); Evans, 80 F.3d at 962. On March 15, 2013, Young, on behalf of Majstorovic, e-mailed State Farm and stated: "I am seeking legal counsel regarding this incident, and will contact you again if need be, but I wish at this time to hold the upstairs units owner responsible for the damages he has caused." [D.E. 20-7] 28. This e-mail demonstrates that at least as of March 15, 2013, Majstorovic was seeking to hold Briggs and his insurance carrier responsible for the damages. Moreover, both Majstorovic and Young testified that they were initially pursuing a claim against Briggs. See Majstorovic Dep. at 7; Young Dep. at 9–11; cf. [D.E. 20-2] 6. Majstorovic's expert, Donald Dinsmore, also testified that Majstorovic filed her claim with State Farm on April 15, 2013, because Majstorovic was initially seeking recourse with Briggs. See Dinsmore Dep. at 14. Accordingly, Majstorovic did not file her claim until April 15, 2013.

Majstorovic argues that State Farm engaged in numerous unfair claims settlement practices identified in N.C. Gen. Stat. § 58-63-15(11). Specifically, Majstorovic contends State Farm violated N.C. Gen. Stat. § 58-63-15(11) by:

> a. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

9

>b. Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies; . . .
>
>d. Refusing to pay claims without conducting a reasonable investigation based upon all available information; . . .
>
>f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
>
>g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insured;
>
>h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled; . . .
>
>n. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

N.C. Gen. Stat. § 58-63-15(11); see [D.E. 25] 12–22.

As for subsection (a), Majstorovic contends that State Farm misrepresented pertinent insurance policy provisions when it sent her a reservation of rights letter that stated she was required to give written notice of her claim under the terms of the policy. See [D.E. 25] 16–17. Majstorovic was not required to give written notice, and State Farm concedes this drafting error. See LaPrade Dep. [D.E. 20-7] 8, 14. Majstorovic also argues that she is entitled to summary judgment based on this violation because State Farm admitted that she was not required to give written notice. See [D.E. 25] 17.

Assuming without deciding that this drafting error constitutes a "misrepresentation," Majstorovic's claim fails because she has failed to produce any evidence that she suffered damages as a result of the error. Damages are a required element of her UDTPA claim. See, e.g., Burrell v.

10

Sparkkles Reconstruction Co., 189 N.C. App. 104, 111–13, 657 S.E.2d 712, 717–18.[2]

As for subsection (b), Majstorovic contends that she filed her claim on February 25, 2013, but that State Farm did not begin to investigate the claim until April 19, 2013. See [D.E. 25] 18. The court rejects this argument because Majstorovic did not file her claim until April 15, 2013, and State Farm acted promptly once Majstorovic filed her claim. On April 17, 2013, State Farm assigned the claim to Hering. On April 19, 2013, Hering met with Majstorovic and inspected the property. Accordingly, Majstorovic has failed to offer any evidence to show State Farm failed "to acknowledge and act reasonably promptly upon communications with respect to claims." See, e.g., Meadlock v. Am. Family Life Assurance Co., 221 N.C. App. 669, 729 S.E.2d 127, 2012 WL 2891079, at *7 (July 17, 2012) (unpublished table decision).

As for subsection (d), Majstorovic argues that "[e]ven though paid bills and invoices were submitted to State Farm in an amount in excess of $19,000.00 and even though these bills clearly showed they were for work necessitated by the water damage on January 26, 2013, the defendant State Farm refused to pay more than $3,309.92 on the claim." [D.E. 25] 14. Majstorovic contends that State Farm failed to speak with the people who completed the repairs on her condominium and instead based the claim payment on photographs that State Farm claimed showed minimal water damage. See id. at 15–16. Thus, Majstorovic contends that State Farm refused to pay her claim

---

[2] It is unclear under North Carolina law whether "conduct that violates § 58-63-15(11) is a per se violation of § 75-1.1, or instead whether that conduct satisfies § 75-1.1's conduct requirement of an unfair or deceptive act or practice, still requiring the complainant to show that the act or practice was in or affecting commerce and proximately caused injury to the plaintiff before finding a violation of § 75-1.1." Elliott, 883 F.3d at 396 n.7. A court sitting in diversity should not create or extend public policy. See Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 324–15 (4th Cir. 2007). Accordingly, Majstorovic must show the alleged "misrepresentation" caused her damages. Majstorovic has failed to make this showing.

11

without conducting a reasonable investigation based on all available information.

The court rejects this argument. State Farm reasonably investigated Majstorovic's claim. Hering inspected Majstorovic's condominium four days after she filed her claim with State Farm. See Hering Aff. ¶¶ 4–5. At the time of the inspection, all of the ceilings had been replaced, the walls had been painted, and the carpet had been removed. See id.; Wheeler Dep. at 27–28. Nonetheless, Hering thoroughly inspected the condominium and reviewed invoices and photographs that Majstorovic provided. See Hering Aff. ¶¶ 5, 7; LaPrade Dep. at 17. Hering considered the photographs that Majstorovic provided but the photographs did not provide evidence that there was enough damage to remove all the ceilings, replace the insulation and ductwork, and install new carpet. See Hering Aff. ¶ 8. Hering tried to call All Seasons three times to learn more about the water damage, but All Seasons did not return her calls. See Hering Aff. ¶ 10. Hering then drafted a detailed estimate. See [D.E. 20-9] 9–22 (estimate). Moreover, in her letter to Majstorovic explaining the result of the investigation, Hering told Majstorovic that she would be happy to consider other evidence and would be happy to speak with All Seasons and make changes to the estimate if All Seasons explained why removal of all the carpets and ceiling was necessary. See id. ¶ 11; [D.E. 20-9] 23–24. Accordingly, Majstorovic has failed to raise a genuine issue of material fact concerning whether State Farm acted unfairly or deceptively in conducting the investigation. Burch, 2013 WL 6080191, at *9; see Prosperity Village Townhome Ass'n, Inc. v. State Farm Fire & Cas. Co., No. 3:13–cv–00363, 2014 WL 4311498, at *5 (W.D.N.C. Aug. 29, 2014) (unpublished); Busch v. Ohio Nat'l Life Assurance Corp., No. 5:09–CV–355–D, 2011 WL 902298, at *6 (E.D.N.C. Mar. 14, 2011) (unpublished).

As for subsections (f) and (g), Majstorovic is upset that State Farm paid approximately only

12

$3,309 when she submitted bills and invoices in excess of $10,000. See [D.E. 25] 18. This claim fails, however, because liability in an amount more than State Farm paid is not "reasonably clear." See Elliott, 883 F.3d at 398; Clear Creek Landing Home Owners' Ass'n, Inc. v. Travelers Indem. Co., No. 1:12cv157, 2012 WL 6641901, at *4 (W.D.N.C. Dec. 20, 2012) (unpublished) ("[T]he fact that Plaintiff may disagree with the assessment of Defendant . . . does not transform a run of the mill insurance dispute into a tort cognizable under Section 75–1.1."); Busch, 2011 WL 902298, at *6. Similarly, no evidence suggests that State Farm believed the claim was worth approximately $19,000, but disputed the claim in order to force Majstorovic to litigate. See Prosperity Village Townhome Ass'n, 2014 WL 4311498, at *6; Blis Day Spa, LLC v. The Hartford Ins. Grp., 427 F. Supp. 2d 621, 636 (W.D.N.C. 2006).

As for subsection (h), Majstorovic contends that "[t]he jury could find . . . that a reasonable man confronted with over $10,000.00 of the bills for insured damage to their condominium and who was only offered only $3,309.92 . . . would have reasonably thought that they were entitled to more than the amount offered by the defendant insurance company." [D.E. 25] 19–20. The difference between Majstorovic's bills and State Farm's payment alone, however, does not establish that State Farm attempted to settle the claim for far less than a reasonable man would have believed he was due. Even viewing the record in the light most favorable to Majstorovic, State Farm thoroughly inspected Majstorovic's condominium, considered all available evidence, attempted to contact All Seasons on multiple occasions, and informed Majstorovic that it would consider any additional information she had concerning her claim. Accordingly, State Farm's payment was reasonable based on the available evidence. See, e.g., Prosperity Village Townhome Ass'n, 2014 WL 4311498, at *6.

As for subsection (n), Majstorovic contends that State Farm failed to reasonably explain the basis for ignoring the documentation from All Seasons concerning the work done on her condominium. See [D.E. 25] 21. Majstorovic also argues that State Farm improperly seeks to blame Majstorovic for not inspecting the property until all of the work had been done. See id. Contrary to Majstorovic's argument, State Farm provided her a detailed letter explaining the results of the investigation and offered to consider any additional information or to speak with All Seasons if the manager returned her call. See [D.E. 20-9] 23. Majstorovic's disagreement with the results "does not give rise to a finding that Defendant failed to provide promptly a reasonable explanation." Cent. Carolina Bank & Tr. Co. v. Sec. Life of Denver Ins. Co., 247 F. Supp. 2d 791, 804 (M.D.N.C. 2003). Moreover, as discussed, State Farm did not investigate Majstorovic's claim until April 19, 2013, because Majstorovic did not file her claim until April 15, 2013. Accordingly, State Farm's investigation was prompt, and State Farm's explanation was reasonable. Thus, the court grants State Farm's motion for summary judgment on Majstorovic's claims under N.C. Gen. Stat. § 75-1.1 and N.C. Gen. Stat. § 58-63-15(11).

B.

As for Majstorovic's bad faith claim, Majstorovic contends that State Farm acted in bad faith by refusing to settle and pay the full value of the claim. See [D.E. 25] 24. "To prevail on a claim of bad faith in the insurance context, a plaintiff must show: 1) a refusal to pay after recognition of a valid claim; 2) bad faith; and 3) aggravating or outrageous conduct." Blis Day Spa, LLC, 427 F. Supp. 2d at 631 (quotation omitted). "Bad faith means not based on a legitimate, honest disagreement as to the validity of the claim." Id. (quotation omitted). "Aggravated conduct [is] defined to include fraud, malice, gross negligence, insult, willfully, or under circumstances of

rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." Id. (quotation omitted); see Topsail Reef Homeowners Ass'n v. Zurich Specialties London, Ltd., 11 F. App'x 225, 237–39 (4th Cir. 2001) (per curiam) (unpublished); LRP Hotels of Carolina, LLC v. Westfield Ins. Co., No. 4:13–CV–94–D, 2014 WL 5581049, at *4 (E.D.N.C. Oct. 31, 2014) (unpublished); Schaffner v. USAA Cas. Ins. Co., 172 N.C. App. 592, 616 S.E.2d 692, 2005 WL 1949877, at *4 (2005) (unpublished); Bank of America Corp. v. SR Int'l Bus. Ins. Co., SE, 2007 NCBC 36, 2007 WL 4480057, at *19–20 (N.C. Super. Ct. Dec. 19, 2007) (unpublished). When an insurer denies a claim that is reasonably in dispute and based on a legitimate disagreement, the plaintiff cannot establish bad faith or aggravating conduct, and the insurer is entitled to summary judgment. See Topsail Reef Homeowners Ass'n, 11 F. App'x at 239; Blis Day Spa, 427 F. Supp. 2d at 632.

Even viewing the evidence in the light most favorable to Majstorovic, this insurance dispute is nothing more than an honest disagreement. Hering inspected Majstorovic's condominium four days after she filed her claim with State Farm. See Hering Aff. ¶¶ 4–5. At the time of the inspection, all of the ceilings had been replaced, the walls had been painted, and the carpet had been removed. See id.; Wheeler Dep. at 27–28. Nonetheless, Hering thoroughly inspected the condominium and reviewed invoices and photographs that Majstorovic provided. See Hering Aff. ¶¶ 5, 7; LaPrade Dep. at 17. Hering considered the photographs that Majstorovic provided but the photographs did not provide evidence that there was enough damage to remove all the ceilings, replace the insulation and ductwork, and install new carpet. See Hering Aff. ¶ 8. Hering tried to call All Seasons three times to learn more about the water damage, but All Seasons did not return her calls. See Hering Aff. ¶ 10. Hering then drafted a detailed estimate. See [D.E. 20-9] 9–22

(estimate). Moreover, in her letter to Majstorovic explaining the result of the investigation, Hering told Majstorovic that she would be happy to consider other evidence and would be happy to speak with All Seasons and make changes to the estimate if All Seasons explained why removal of all the carpets and ceiling was necessary. See id. ¶ 11; [D.E. 20-9] 23–24. Accordingly, the court grants State Farm's motion for summary judgment on Majstorovic's bad faith claim.

C.

As for Majstorovic's claim for mental and emotional damages, Majstorovic appears to have abandoned her claim for mental and emotional damages. See [D.E. 20-11]. Alternatively, and in any event, Majstorovic has not produced any evidence supporting her claim. Moreover, the only remaining claim is Majstorovic's breach of contract claim, and mental and emotional damages are not typically available in breach of contract cases. See, e.g., Beasley v. Nat'l Sav. Life Ins. Co., 75 N.C. App. 104, 109–10, 330 S.E.2d 207, 210 (1985); Carroll v. Rountree, 34 N.C. App. 167, 174, 237 S.E.2d 566, 572 (1977). Accordingly, the court grants State Farm's motion for summary judgment on Majstorovic's mental and emotional damages claim.

D.

As for State Farm's motion to exclude Majstorovic's expert, the proposed expert testimony concerns Majstorovic's claims for bad faith and unfair and deceptive practices. The court has granted State Farm's motion for summary judgment on these claims, and the only remaining claim is Majstorovic's breach of contract claim. The expert testimony would not assist the jury in resolving the breach of contract dispute. See, e.g., Hemphill v. Liberty Mut. Ins. Co., No. Civ. 10-0861 LH/RHS, 2013 WL 12124068, at *1 (D.N.M. Mar. 27, 2013) (unpublished); Fed. R. Evid. 702(a). Accordingly, the court denies State Farm's motion as moot.

III.

In sum, the court GRANTS defendant's motion for partial summary judgment [D.E. 19], and DENIES as moot defendant's motion to exclude plaintiff's expert [D.E. 22]. The parties shall engage in a court-hosted settlement conference with United States Magistrate Judge Gates. Judge Gates will contact the parties about the settlement conference.

SO ORDERED. This 24 day of March 2018.

JAMES C. DEVER III
Chief United States District Judge